UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED

NOV 25 2020

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

UNITED STATES

v.

17-254 (FLW)

SHEVANDRA VERASAWMI

I, Shevandra Verasawmi, pro se, respectfully move the Court to reduce my sentence pursuant to 18 USC 3582 (c)(1)(A) for extraordinary and compelling reasons. I am a 41-year-old smoker of 20 years who suffers from Severe Obesity (BMI > 40). My medical condition places me in a vulnerable, at-risk, population if I were to contract Covid-19. This underlying condition, combined with the growing Coronavirus pandemic, and my demonstrated active growth toward rehabilitation. provide an extraordinary and compelling basis for a sentence reduction.

I request that the Court reduce my sentence to time-served, or, in the alternative, modify my term of supervised release such that I may serve the remainder of my sentence in Home Confinement where I would be less likely to suffer serious illness, or even death, from Covid-19.

## FACTUAL BACKGROUND

On September 12, 2018, this Court sentenced me to 87 months of imprisonment, followed by 36 months of supervised release, for three counts of Mail Fraud and one count of Conspiracy to commit Mail Fraud.

I began serving my sentence on October 16, 2018, and my projected release date is in December 2024. I am currently incarcerated at Fort Dix Minimum Security Prison.

## LEGAL ARGUMENT

On December 21, 2018 the First Step Act of 2018 ("FSA") was enacted into law. Among several criminal justice reforms, the FSA makes fundamental changes to how federal compassionate release functions. See First Step Act of 2018, 603(b), Pub L. No. 115-391, 132 Stat. 5194, 5239 (2018). Notably, Congress amended 18 USC 3582(c) (1) (A) by permitting the sentencing court to entertain motions for compassionate release filed by defendants. Id.

The FSA allows me to appeal directly to the court for compassionate release when: (1) I have exhausted all administrative rights of appeal to the Bureau of Prisons ("BoP"); (2) extraordinary and compelling reasons warrant such a reduction; (3) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission", and; (4) after considering the factors set forth in 18 USC 3553(a).

## 1. EXHAUSTION

As a prerequisite of judicial relief, the FSA requires that the court may consider a motion brought directly by a defendant "after the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier..." 18 USC 3582(c)(1)(A)(i).

On April 6, 2020, I submitted an application to Warden David Ortiz requesting that the BoP move the Court to release me to Home Confinement pursuant to 18 USC 3582 (c)(1)(A). To date, I have received no response.

I have exhausted all administrative appeals and this matter is correctly before the court.

## 2. EXTRAORDINARY AND COMPELLING REASONS

Many Federal Courts have concluded that 'extraordinary and compelling' circumstances exist when an incarcerated defendant suffers from health conditions that make him particularly susceptible to serious complications should he contract Covid-19. See e.g. United States v. Estrella, No. 2:15-CR-32-GZS, (June 16, 2020) p.3 ECF #46; United States v. Christian, No. 2:13-CR-96-NT, (May 6, 2020) ECF #80.

The Department of Justice generally agrees that an inmate who suffers from the chronic conditions recognized by the CDC with the high risk of severe illness from Covid-19 may be eligible for compassionate release. See Wise v. United States, No. CR-ELH-18-72; 2020 WL 2614816, at *7 (D MD May 22, 2020);United States v Wright, No. CR-TDC-17-0388, 2020 WL 2571198, at *3 (D MD May 21, 2020)("government now agrees that inmates diabetes condition, and perhaps other medical conditions, could constitute 'extraordinary and compelling reasons'");United States v. Atkinson, 2020 WL 1904585, at *3 (D NEV April 17, 2020)("presence of Covid-19...necessitates more expansive interpretation of self care to include Covid-19 vulnerability coupled with inability to practice CDC recommended safeguard procedures"); United States v. Esperanza, 2020 WL 1696084, (D IDAHO, April 7, 2020)(Same); See also Government's Response in Opposition to Defendant's Motion to Reduce Sentence Pursuant to 18 USC 3582 (c)(1)(A), United States v. Hird, No. 2:13-CR-39-TJS, Dkt. No. 650 (ED PA May 19, 2020)(Government concession that "the risk of Covid-19" to a vulnerable inmate "presents a serious physical or medical condition...that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility.")

I contend that the Court may find that "extraordinary and compelling reasons' exist due to (A) the Covid-19 virus and how the BoP is handling it, (B) how the virus is affecting FCI Fort Dix, and (C) the vulnerability I have based on my chronic medical condition and (D) my family circumstances.

    (A) Covid-19 and the Bureau of Prisons

As of November 11, 2020, the BoP has reported 135 inmate deaths and two staff deaths within the Federal Prison system, as well as 2,455 positive cases among inmates and 981 staff (up 24% and 11% from the prior Friday), 17,067 inmates and 1,543 staff have recovered. See Covid-19 Cases, BoP (November 11, 2020) https://www.bop.gov/coronavirus/.

Covid-19 is tearing through the BoP facilities like wildfire. It has been reported that incarcerated individuals are being infected at a rate more than 6.5 times higher than in the United States. See Federal Defenders of New York, BoP-Reported Positive Tests for Covid-19 Nationwide, https://federaldefendersny.org.

In the United States, an estimated 2.1 million adults are housed within approximately 5,000 detention facilities on any given day. See Bureau of Justice Statistics, Key Statistic: total correctional population, https://bjs.gov/index.cfm?ty=kfdetail&iid=487.

Needless to say, these facilities face significant challenges in adequately addressing the spread of highly infectious pathogens such as Covid-19. See also Wallace M, Hagan L, Curran KG, et al., Covid-19 in Correctional and Detention facilities, CDC Morbidity and Mortality Weekly Report (May 15, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e1.htm.

Such challenges include "crowded dormitories, shared lavatories, limited medical and isolation resources, daily entry and exit of staff members, continual introduction of newly incarcerated or detained persons, and transport of incarcerated or detained persons in multi-person vehicles for court-related, medical or security reasons." See Bick JA, Infection Controls in Jails and Prisons, Clin Infect Dis 2007; 45:1047 55. Also see CDC Interim Guidance on Management of Coronavirus Disease 2019 (Covid-2019) in Correctional and Detention Facilities, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correction-detention.html.

Prisons have been hit particularly hard by the pandemic, as they present numerous environmental factors favorable to the spread of the virus. See United States v. Rodriguez, No. 03-271, 2020 WL 1627331, at *1, 8-9 (ED PA April 1, 2020) ("Prisons are tinderboxes for infectious disease.")

(B) Fort Dix

I am currently housed in an open air dormitory containing 86 men cramped in 104 bunks. Due to the lockdown policies of the BoP, I spend an average of 18 hours a day restricted to that dormitory, while only being allowed outdoors for 3 hours per week. I live, eat, and sleep less than 6 feet away (the CDC's minimum for 'social distancing') from 5 other men. We have no religious services, no programming, only self-study education (which I participate in), and extremely limited medical services (there is no Doctor assigned to the Camp). When not locked in my dorm, my activities are limited to watching TV or working out, Fort Dix is no longer a Correctional Institution, it is a warehouse.

On November 11, 2020, the BoP Fort Dix website currently lists 229 positive cases of Covid-19 among inmates and 12 staff. In October, no inmates tested positive at Fort Dix.

(https://www.bop.gov/coronavirus/). The BoP also reports 41 inmates and 6 staff recovered, but that number does not include prisoners no longer at Fort Dix. The reality is that Fort Dix Minimum Security Camp housed 230 people on April 1, 2020, and 58 of them, fully 25% contracted the disease. See Wragg v. Ortiz, 20-CV-05496 (D NJ), Dkt No. 1.

Between May 7, 2020, and October 1, 2020, no testing was done at Fort Dix, the largest single prison facility in the BoP. Yet, the BoP has the audacity to suggest that the the virus is well-controlled.

Additionally, there have been numerous reports that conditions at Fort Dix are contributing to the spread of the disease. These circumstances caused the ACLU of New Jersey to file a lawsuit on behalf of medically vulnerable inmates at Fort Dix. Id. One news article about the lawsuit states the following:

> A 75 year-old food server visibly ill with Covid-19 continued working for days. Empty soap dispensers and no paper towels. A senior staff member spraying a collapsed prisoner with disinfectant before removing his mask, which contained blood and green vomit.
>
> These are some of the conditions inmates at Federal Correctional Institution at Fort Dix in Burlington County described living through in the past month, since the first case of the coronavirus was identified in early April....
>
> "FCI Fort Dix is speeding toward a public health catastrophe." said ACLU-NJ Legal director Jeanne LoCicero. "Our clients are unable to take even the most basic precautions to protect themselves against the virus. The government is failing in its obligation to keep people in its custody safe from harm, putting them and the wider community at risk."
>
> Covid-19 Horror Stories Prompt ACLU NJ to File for Temporary Release of Medically Fragile Prisoners, Colleen O'Dea, WHYY.org (May 6, 2020), https://whyy.org/articles/covid-19-horror-stories-prompt-aclu-nj-to-file-for-temporary-release-of-medically-fragile-prisoners/. See also, e.g. Weill-Greenberg Elizabeth, Coronavirus is Ready to Explode Inside Fort Dix Federal Prison, Incarcerated People and Their Loved Ones say, The Appeal.org (April 23, 2020), https://theappeal.org/fort-dix-prison-new-jersey-coronavirus/.

The petitioners in the ACLU lawsuit have filed declarations from experts opining, among other things, that "persons currently detained at FCI Fort Dix are at significantly greater risk of contracting Covid-19 than if they were permitted to shelter in place in their home communities." Goldstein Declaration, Wragg v. Ortiz, 20-CV-05496 (D NJ) Dkt. No.1-1 at 8, para 37; and that "those who are medically vulnerable need to be moved out of FCI Fort Dix to the absolute maximum extent possible." Id. at 8 para. 40.

The Warden of Fort Dix acknowledges in an April 11 notice to inmates that "social distancing is not possible in this environment." Id.

Despite the class action complaint being dismissed, the petitioners' accounts of the conditions raise concerns that are shared in many low-risk correctional facilities: living, sleeping, eating, and recreating in crowded conditions that make effective social distancing impossible. As such, prisoners at Fort Dix cannot comply with the Centers for Disease Control and Prevention guidelines for physically distancing, a "cornerstone" of risk reduction in prison. See CDC Interim Guidance on Management of Coronavirus Disease 2019 (Covid-19) in Correction and Detention Facilities (March 23, 2020) at 4 "Although social distancing is challenging to practice in correctional and detention environments, it is a cornerstone of reducing transmission of respiratory disease such as Covid-19." https://www.cdc.gov/2019-ncov/community/correction-detention/guidance-correction-detention.html.

In a recent Court ruling granting compassionate release to an inmate of Fort Dix Camp, the Judge had this to say:

> "...the large population at Fort Dix, along with the lack of testing at the facility, may fail to accurately portray the crisis at the prison. Supposedly, the Government argues, because Fort Dix has not seen a spike in confirmed cases, it can be assumed that the preventative measures at the prison have been effective. Perhaps there are relatively few cases of the virus at Fort Dix. But the Court does not subscribe to the Government's line of thinking. It suggests that ignorance is the best policy: Fort Dix only needs to be concerned when test-confirmed cases increase but need not test widely. That strikes the Court as a risky deal-with-it-only-if-forced-to strategy." See United States v. Eric SiJohn Brown, No. 2:13-CR-00176-1 (ED PA Sept. 25, 2020)

Accordingly, the Court found that "there is more than a mere speculative risk of infection at Fort Dix." Id.

(C) Medical Considerations

The CDC has issued guidance concerning who may be "at increased risk for severe illness from Covid-19". That list includes "people of any age with: Cancer; Chronic Kidney Disease; COPD; an Immunocompromised state due to organ transplant; Obesity (body mass index [BMI] of 25 or higher); Serious Heart Conditions; Sickle Cell Disease; and Type 2 Diabetes Mellitus". Further, people with the following conditions "might be at an increased risk for severe illness from Covid-19: Asthma; Cerebrovascular Disease; Cystic Fibrosis; Hypertension or high blood pressure; Immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of immune weakening medicines; Neurologic conditions; Liver Disease; Pregnancy; Pulmonary Fibrosis; Smoking; Thalassemia; or Type 1 Diabetes Mellitus". See CDC list of People who need to Take Extra Precautions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-risk.html.

I suffer from chronic medical issues that have been identified by the CDC as placing me in a high risk category and the courts have confirmed the devastating impact of Covid-19 on vulnerable inmates with even one of those conditions.

I am 41 years old and suffer from Severe Obesity (BMI of more than 40) and have been a smoker for more than 20 years. As an incarcerated person it is impossible for me to follow the CDC's recommendations to protect myself from exposure to this highly transmissible disease. My medical condition would place me at a higher risk of severe complications from Covid-19 and combined with the inability to keep myself safe, the risks are exacerbated further.

As a person who suffers from obesity, which is one of the strongest predictive indicators of severe complications from Covid-19, I face a risk of death from Acute Respiratory Disease Syndrome (ARDS). One of the reasons given for obesity being a strong predictor of severe complications from Covid-19 is that obese individuals "may already have compromised respiratory function" and that "can cause compression of the diaphragm, lungs, and chest cavity" and further, "obesity is known to cause chronic, low-grade inflammation and an increase in circulating pre-inflammatory cytokines, which may play a role in the worst Covid-19 outcomes". See Roni Caryn Rabin, Obesity Linked to Severe Coronavirus Disease, Especially for Younger Patients," New York Times (April 16, 2020).

"Obesity is more important for hospitalization than whether you have high blood pressure or diabetes, though those often go together, and it's more important than coronary disease or cancer or kidney disease, or even pulmonary disease". Id (quoting Dr. Leora Horwitz who is the senior author of the paper on the study of obesity and coronavirus and is the director of the Center for Healthcare Innovation and Delivery Science at NYU Langone).

A death by ARDS is particularly agonizing, because the patient suffocates to death as thick film covers the walls of the lungs, preventing oxygen from reaching the bloodstream and any of the vital organs. In patients who do not die, Covid-19 can severely damage lung tissue, requiring an extensive period of rehabilitation, and in some cases, can cause a permanent loss of respiratory capacity.

It cannot be disputed that I am among those with the highest risk of death or serious illness from Covid-19.

This risk of serious illness, or even death, from an unprecedented global pandemic, together with the conditions at Fort Dix Minimum Security Camp, presents an extraordinary and compelling basis for sentence reduction.

(D) Family Circumstances

My sister was released from incarceration when she contracted Covid-19, but she went on to suffer from a collapsed lung and has developed a myriad of other health issues. Additionally, my father is not mobile as a result of being hit by a tractor trailer and both of my parents are elderly. If they should be infected by Covid-19, either, or both, could suffer severe complications or even death. Due to the pandemic, I have only seen my family one time in the last 8 months.

### 3. APPLICABLE POLICY STATEMENTS FROM THE USSG (1B1.13)

Under 18 USC 3582(c)(1)(A), the court may modify my sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." See 18 USC 3582 (c)(1)(A). The pertinent policy Statement is USSG 1B1.13.

Courts have disagreed over the whether the First Step Act allows courts to independently determine what reasons, for purposes of compassionate release, are "extraordinary and compelling," or whether that power remains exclusively with the BoP Director as stated in Application Note 1(D). It is manifest that its language is clearly outdated and cannot be fully applicable. The very first words of the Guideline are "[u]pon motion of the Director of the Bureau of Prisons." USSG 1B1.13 This is exactly what the First Step Act was expressly written to address. In addition, Application Note 4 says that "a reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 USC 3582(c)(1)(A)." USSG 1B1.13, n.4. Therefore, USSG 1B1.13 is outdated in light of the FSA, and no update to that Guideline appears forthcoming because the Commission currently lacks a quorum of voting members.

A majority of courts have concluded that the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances. See Untied States v. Young, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (MD TENN Mar. 4, 2020); United States v. Scott, No. 17-CR-156, Lexis 85554, at *8 (ED WIS May 15, 2020); United States v. Mel, No. TDC-18-0571, Lexis 74491, at *3 (D MD Apr. 28, 2020); United States v. Haynes, No. 93-CR-1043-(RJD), Lexis 71021, at *14 (ED NY Apr. 22, 2020); United States v. Decatur, Lexis 60109, at *2-3 (D MD Apr. 6, 2020);United States v. Redd, No. 1:97-CR-00006-AJT, Lexis 45977, at *8 & 18 (ED VA Mar. 16, 2020; United States v. Lisi, Lexis 31127, at *3 (SD NY Feb. 24, 2020).

In a recent persuasive precedential case the court found "if a compassionate release motion is not brought by the BoP Director, Guideline 1B1.13 does not, by its own terms, apply to it. Because 1B1.13 is not "applicable" to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain courts' discretion to consider whether reasons are extraordinary and compelling." United States v. Zullo, No. 19-3218-CR, 2nd Cir. (Sep. 25. 2020).

### 4. 18 USC 3553(a) FACTORS

In the final phase of the courts analysis, it must consider whether the factors set forth in 18 USC 3553(a) countenance such a reduction. The Court must consider what is "sufficient, but not greater than necessary, to comply with the purposes of [sentencing]." 18 USC 3553 (a).

The Court used the factors of 18 USC 3553 (a) to impose the original sentence and now must reevaluate if it has found extraordinary and compelling circumstances exist. In pertinent part, the Court must: (A) review the defendant's characteristics; (B) allow for due consideration of the seriousness of the offense, promote respect for the law, and provide just punishment; (C) protect the public from further crimes; and (D) provide the necessary correctional services and treatment.

### (A) My Characteristics Allow A Sentence Reduction

While I understand the seriousness of the offense for which I was sentenced, I submit to the Court that I am a changed man from the one who stood before you at sentencing. Since my incarceration I have demonstrated that I am committed to successfully altering my conduct. The Court is guided by the Supreme Court's observation that "evidence of post sentencing rehabilitation may plainly be relevant to the 'history and characteristics of the defendant." See Pepper v. United States, 562 US 476, 491 (2011).

I have had no disciplinary reports during the entirety of my incarceration. I have been a Food Service Worker with excellent reports for my performance. I have participated and even led religious services and believe that my spirituality has helped me become a better man. I am currently completing the Vocational Training for the Chef Apprentice Program and have already successfully completed the Serv-Safe Certification Program for Managers, and the Basic Cognitive Skills course.

I have actively sought out programs to help me become a better person during my time at Fort Dix and have participated in Educational Programs, including: Introduction to OSHA; OSHA Recordkeeping for Employees; Personal Protective Equipment; Respiratory Protection and Safety; Electrical Safety, and; Welding Safety among others. I have taken all classes available during the pandemic.

I have completed the Drug Education program and the Non-Residential Drug Awareness Program. I am qualified to take the Residential Drug Awareness Program. Upon successful completion of 'RDAP', a nine month immersive self-improvement and rehabilitation program, participants are rewarded with a one year sentence reduction and one year of Halfway House.

### (B) Seriousness Of The Offense, Respect For The Law, And Just Punishment

While I know my crime was grave, I can not state strongly enough the ways in which my current incarceration has changed the man I am. It would be impossible for the Court to understand the life altering feeling of being put in prison for an extended sentence. I immediately understood the damage I had done not only to myself, but to everyone who loved me.

Being in an environment like this puts everything else in stark perspective. The things that are truly important in life become unavoidably evident. The love and support of my family, the simplicity of the freedoms of every day life, the availability of choice: those are the things I value most now.

I have served 32% of my statutory sentence, 48% if my successful completion of RDAP is factored in, and know that it has accomplished the goal of promoting respect for the law and acting as a deterrent. My potential exposure to Covid-19 could turn my current sentence into a death sentence. The court must weigh the value of deterrence against increasing the threat of a possibly lethal infection." See United States v. Gardner, No. 14-CR-20735-001, Lexis 129160, at *8 (ED MICH July 22, 2020). Bearing in mind "the harsh prison conditions imposed to avoid contracting Covid-19, the pandemic has rendered [my] sentence far harsher and more punitive

than the Court [could have] anticipated at sentencing" See United States v. Diego Rodriguez, No. 00-CR-761-2-JSR, Opinion and Order (SD NY Sept. 30, 2020).

Indeed, recognizing this, courts around the country have found, in the context of Covid-19, that release will "allow the court to exert compassion ... and maintain the overall integrity of the legal system." See United States v. McKinnon, 2020 WL 4530737, at *4 (MD PA Aug. 6, 2020). Examples include:

> Defendant 2 months into a 12 month sentence: "Defendant was sentenced on December 19, 2019, to serve 12 months in custody and two years of supervised release on Count 1 of the indictment, Wire Fraud Conspiracy, a non-violent offense. Defendant fraudulently obtained nearly $107 million in government set-aside contracts from June 2005 to June 2013....Using its discretion, the Court considered Defendant's status as a first-time offender, age and health condition, among other factors, and granted Defendant a downward variance at sentencing....Defendant...has served approximately two months out of his 12 month custodial sentence....Pursuant to the Covid-19 pandemic, it appears to the Court that the Defendant's age and health condition place him in the highest risk category for complications and death from the disease if infected....The Court cannot ignore that the threat of Covid-19 exists now." United States v. Pomante, No. 19-20316, Lexis 85626, (ED PA May 15, 2020).

> Defendant 4 months into a 42 month sentence: "Last year, the Court sentenced Sedrick Body to a forty two month prison term after he pled guilty to a charge of conspiracy to distribute heroin and crack cocaine....Body reported to prison on January 28, 2020, about four months ago....[S]ection 3582 (c)(1)(A) requires the Court to consider the factors...set forth in 18 USC 3553 (a)....This is where it gets difficult. The Court can say, unequivocally, that the amount of time served to date by Body does not adequately account for the seriousness of his offense. He is essentially a lifelong, unrepentant drug dealer[.] If the seriousness of the crime were the sole question, the Court would have no hesitation summarily denying Body's motion....But it is not the sole question....Body is now potentially exposed to severe infectious disease, the spread of which is likely increased in a prison environment. If he remains incarcerated he may avoid contracting the Coronavirus, and if he contracts it, it is certainly possible that he will come through all right. But there is a very significant risk that the opposite will happen. It was not and is not the Court's intention, in imprisoning Body, to send him to his death or put him at daily risk of serious bodily harm. That, however, is the reality that Body is facing today. Requiring him to be subjected to the severe risk for an extended period does not amount to just punishment, nor does it in the Court's view, promote respect for the law. As a condition of reducing Body's prison term, however, the Court will add a supervised release condition of twelve months of home detention with location monitoring. In other words, Body's liberty will continue to be restricted in a significant way for the next twelve months." United States v. Body, No. 18-CR-503-1, Lexis 92069, (ND ILL May 27, 2020).

> Defendant 2 months into a 24 month sentence: "Defendant Anil Prasad reported to the Federal Correctional Institution in Oakdale, Louisiana ("Oakdale") on March 30, 2020 to

serve a 24 -month sentence for conspiracy to unlawfully prescribe controlled substances for no legitimate medical purpose....and conspiracy to commit health care fraud....This Court finds that, in light of the heightened medical risk the Covid-19 virus poses to Prasad in particular, there are extraordinary and compelling reasons to order his immediate release from Oakdale....In addition, the conditions of incarceration, in which inmates sleep, eat, and shower in close quarters, make controlling the spread of Covid-19 extremely difficult. Prasad is therefore unable to provide self care within the environment of the correctional facility to avoid contracting Covid-19....While serious, his offenses were non-violent....In addition, the 3553 (a) sentencing factors support his release. this Court finds that, taking into account Prasad's medical condition and need for medical care, a modified sentence requiring Prasad to serve the remainder of his sentence on home confinement sufficiently reflects the seriousness of his offenses and promotes respect for the law." United States v. Prasad, No. 19-71 Section ;H', Lexis 96249, at *1 (ED LA June 2, 2020).

Defendant 4 months into a 24 month sentence: "On January 13, 2020, Defendant was sentenced to a term of imprisonment of twenty four months, followed by three years of supervised release, ECF No. [44], and he voluntarily surrendered himself to federal custody on February 26, 2020....In particular, neither the history or characteristics of the defendant, nor the considerations regarding the need for the sentence imposed, warrant keeping the Defendant in federal custody while he suffers from diabetes, hypertension, asthmatic symptoms, and Covid-19. While there is no doubt that the Defendant's conviction was serious, the Court recognizes that he had no prior criminal convictions, which suggests that Defendant does not pose a high risk of committing further crimes. Moreover, releasing Defendant to strict home confinement allows him to continue to repay his debt to society, imposes an adequate punishment, and promotes respect for the rule of law, while simultaneously allowing him to seek medical care and treatment by providers who are familiar with his medical issues and equipped to treat him....Additionally, the fact that Defendant has served less than five months of his sentence is not dispositive given Defendant's current health issues and the obstacles he faces in receiving adequate and complete treatment while incarcerated. Requiring Defendant to continue serving his sentence in federal custody while seriously ill and with the risk of inadequate medical care means that his sentence [would be] significantly more laborious than that served by most inmates. It also means that further incarceration in his condition would be greater than necessary to serve the purposes of punishment set forth in 18 USC 3553 (a)(2)." United States v. Vasquez Torres, No. 19-CR-20342-BLOOM, Lexis 121435, at *1 (SD FLA July 14, 2020).

Defendant 7 months into a 51 month sentence: "Defendant is a 51 year old inmate currently detained at the Jessup Federal Correctional Institution ("FCI")....On December 19, 2019, Defendant was sentenced to fifty one months imprisonment and three years of supervised release....Defendant has established that his underlying health conditions place him at higher risk of developing complications from Covid-19....[A]s the government emphasizes, he has served just over ten percent of his fifty one month sentence. Defendant deserved the sentence the Court imposed in December 2019. But the extraordinary nature of the Covid-19 pandemic has altered life as we know it. The

risks to the Defendant's life and health now outweigh the punitive benefits that would be gained from keeping him incarcerated at this time. Accordingly, the Court intends to convert Defendant's remaining term of imprisonment into a one year term of home confinement as an additional condition of supervised release. Under these circumstances, the Court is satisfied that the objectives of 18 USC 3553 (a) are satisfied." United States v. Smith, No. CR19-107RSL, Lexis 134596, at *1 (WD WASH July 29, 2020).

Defendant 7 months into a 72 month sentence: "On January 9, 2020, Defendant was sentenced to seventy two months incarceration. Defendant...is scheduled to be released April 2024....Defendant, a forty one year old man,...[his] compromised health conditions, taken in concert with the Covid-19 public health crisis, constitute an extraordinary and compelling reason to modify Defendant's sentence....Defendant was convicted for a non-violent crime and, although he has not served the majority of his sentence and certain sentencing factors may weigh against release, the sentencing factors do not override the high risk of severe illness or death posed by Covid-19. It is hereby ORDERED that. for the foregoing reasons, Defendant's application is GRANTED." United States v. Ramirez, No. 19CR 105(LGS), Lexis 145800, at *1-4 (SD NY Aug 6, 2020).

Defendant 9 months into a 54 month sentence: "The coronavirus outbreak, the virus's confirmed presence in FCI Terre Haute and the evidence that it is not under control in the institution, and the risks the virus poses to Sullivan due to his medical condition certainly qualify [as extraordinary and compelling reasons]....The amount of time served to date by Sullivan does not adequately account for the seriousness of his offense; the Court concluded as much when it sentenced Sullivan to a fifty four month prison term....[A]lthough the Court was satisfied at the time of sentencing that it was imposing a fair and reasonable sentence, matters have changes significantly. Sullivan is now exposed to an infectious virus, the spread of which is almost certainly increased in a prison environment. And he faces a significant risk of a severe outcome if he contracts the virus....Requiring him to be subjected to this severe risk for an extended period does not, in the Court's view, amount to just punishment, nor does it promote respect for the law." United States v> Sullivan, 2020 WL 5630508, at *1 (ND ILL Sept. 21, 2020).

(C) Danger To The Community

As I have previously stated, I am currently incarcerated at FCI Fort Dix Minimum Security Camp. I have been assigned an "out custody" level, and if Fort Dix were not adjacent to a working military installation, I would be in "community custody". I have been graded a Minimum Security Classification by the Bureau of Prisons. Further, according to the BoP's PATTERN Risk Assessment system, I score a Minimum, or the least likely to recidivate. Each of these suggest that the BoP itself, and by extension, the Department of Justice considers me no threat to the community or to re-offend.

My crime, although serious, was non-violent. If the Court deems it necessary, it could impose as a condition of my Supervised Release, a period of time to be spent on GPS-enforceable Home Confinement, effectively expanding my incarceration to a place which would not pose the same risks to me or any risk to the community.

While Home Confinement may be more comfortable, it is still confinement. I don't wish to avoid my just punishment, I wish only to avoid unintended consequences of my presence in a congregate environment in which the pandemic can, and surely will take lives.

### (D) FCI FORT DIX Can Offer Me Nothing But A Cell

I maintain that a sentence reduction is warranted because most educational, and all programming, religious, and vocational opportunities that may have been available to me have been suspended with no return in the foreseeable future. Further, by eliminating these correctional activities, the BoP presently has nothing to offer me but a cell. I respectfully submit that at some point incarceration serves no meaningful purpose but to effect punishment for punishment's sake. Indeed, both federal statutes and the Guidelines acknowledge that "rehabilitation is not to be achieved through imprisonment. See United States v. Anderson 15 F. 3rd 278,282 (2nd Cir. 1994) (citing 18 USC 3582(a) and 28 USC 994(k)).

The overriding factor under 18 USC 3553(a) that was not present at the time of sentencing is the Covid-19 pandemic and the serious risk it presents. Although the seriousness of my offense led the Court to impose its original sentence, the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness.

### MY RE-ENTRY PLAN WOULD PROTECT MY FAMILY, THE COMMUNITY AND ME

If the Court grants my Motion I will reside in Hazlet, New Jersey with my wife. She has put aside a separate room for me so that I may self-isolate for a 14 day quarantine period. She is available at the Courts' convenience to confirm that she is not only willing to accept me back into our home, but is anxiously awaiting my return.

I plan to gain employment in the Computer Programming or Instruction field as soon as the Court deems it appropriate. Any time prior to my being permitted to work, I plan to use pursuing on-line training and trying to become a better husband and member of the community.

### CONCLUSION

WHEREFORE, for all the above reasons I respectfully request that the Court reduce my sentence to time served and order my immediate release from BoP custody. I do not object to the Court imposing a condition of home confinement should it see fit.

_Shevandra Verasawmi_

I, Shevandra Verasawmi, pro se, file this Supplemental Motion to make the Court aware of the worsening circumstances at Fort Dix since the printing of the Motion for Compassionate Release.

I respectfully ask the Court to consider the Motion on an expedited basis.

On November 11, 2020, when I composed the Motion, the number of positive inmates at Fort Dix was 229, today, November 16, 2020 it is 235.

In a letter to the Michael Carvajal, Director of the Bureau of Prisons, Corey Booker and Robert Menendez, both of New Jersey's Senators called the situation at Fort Dix a "rapidly escalating crisis,' going on to say that "[a]ll Fort Dix inmates, staff, and the surrounding communities are now at risk for contracting Covid-19, with potentially fatal consequences."

"As recently as mid-October, U.S. Attorneys opposing compassionate Release motions by Fort Dix prisoners argued that 'the BoP has taken effective steps to limit the transmission of Covid-19.'" See Melamed, Samantha, Covid-19 Outbreak Infecting Hundreds at Fort Dix, The Philadelphia Inquirer (November 10, 2020).

On November 3, 2020 a judge in the Eastern District of New York granted release to Daniel Mongelli, citing "the failure of the Bureau of Prisons to prevent and control a Covid-19 outbreak at FCI Fort Dix." Id

In United States v. DePergola, in which the Court had previously denied DePergola's Motion for Compassionate Release, the "recent alarming Covid-19 outbreak at FCI FortDix...[which] has the highest number of cases in the federal prison system" caused the Court to reconsider and grant DePergola's Emergency Motion to Reconsider. See United States v. DePergola

Similarly, In the Southern District of New York, Judge Alison J. Nathan, who had previously denied the pro se Motion from Eric Fernandez for Compassionate Release granted his renewed Motion. Mr. Fernandez had served 66 month of a 135 month sentence for Conspiracy to Distribute 5 Kilograms or more of Cocaine. At the time Judge Nathan granted Fernandez's Motion there were 5 current and 35 recovered cases of Covid-19 at Fort Dix. The Court rightly had"...concerns that the reported numbers on the BoP website might not reflect the true scope of the outbreak at Fort Dix." See United States v. Eric Fernandez, No. 12-CR-844-9(AJN), Lexis 99552 (SD NY Oct. 14, 2020).

The courts have spoken clearly about the dangerous conditions at Fort Dix and their balance with 18 USC 3553 (a) factors.

For the foregoing reasons, I ask the Court grant my Motion.

Respectfully submitted,

Shevandra Verasawmi

## Certificate of Service

I hereby certify that a copy of the enclosed Motion has been duly served upon the following, first class postage pre-paid, via the United States Postal Service:

**DANIEL V. SHAPIRO**
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
970 BROAD STREET
SUITE 700
NEWARK, NJ 07102

_____
Shevandra Verasawmi

JOINT BASE MDL, NJ 08640

CLERK OF COURT
U.S DISTRICT COURT
402 EAST STATE ST. Room 20
TRENTON, NJ
08608-1*